UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KA'RON CRENSHAW,

        Petitioner,                         Case Number 13-13574
                                                      Honorable David M. Lawson

v.

CINDI CURTIN,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      Petitioner Ka'ron Cortez Crenshaw was convicted by a Wayne County, Michigan jury of armed robbery and firearms offenses. He was sentenced as an habitual offender to substantial prison terms, and presently is confined at the Oaks Correctional Facility in Manistee, Michigan. He has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that his convictions violate his constitutional rights because there was insufficient evidence to prove that he was the perpetrator of the offenses, and the photo array displayed to the robbery victims was illegal because he was in custody at the time, and it was unduly suggestive. The respondent has filed an answer asserting that the petitioner's first claim is meritless and the second claim is procedurally defaulted and lacks merit. The Court agrees that the petitioner's claims are meritless and therefore will deny the petition.

<p align="center">I.</p>

      The facts of the case, as taken from the trial testimony, were well summarized by the Michigan Court of Appeals, which adjudicated the petitioner's direct appeal, as follows:

> Michael Dahl (Dahl) testified that on August 19, 2009, at 9:00 a.m., he and Lewis Vernon Smith II (Smith) made plans to go to Hawthorne Street in the city of Detroit, Michigan. They eventually met up with "Kevin" and "Peanut" [Dahl testified he

> knew these men only by their nicknames] in front of a camper parked in a driveway on Hawthorne Street. After getting into the car, Smith, "Peanut," and "Kevin" smoked some marijuana. "Peanut" and "Kevin" asked if Dahl and Smith would take them to a white house at 19125 Russell Street, in the city of Detroit. After stopping at Russell Street, Dahl agreed to stop and pick someone else up. "Kevin" and "Peanut" both got out of the car and went inside the house, emerging about ten minutes later with defendant.
>
> After defendant got into the car, he told Dahl and Smith to go around the block to Hannah Street. Defendant then pointed out a house on Hannah Street and the men stopped in front of that house and "Kevin," "Peanut," and defendant got out of the car and went behind the house on Hannah Street. Dahl, Smith, and "Peanut" went inside the house and "Peanut" locked the door behind them. Dahl immediately saw "Kevin" inside the house. Defendant then came out with a gun that looked like an old army gun and cocked it. Dahl and Smith said, "[A]re you serious?" Defendant responded, "You think I'm playing," and then defendant pulled the trigger while pointing the gun at Dahl and Smith. The gun "clicked" but did not go off. Defendant then told Dahl and Smith to get on the ground, which Dahl and Smith did. Defendant told Dahl and Smith to lay flat on their faces, and told "Kevin" and "Peanut" to go through their pockets. Defendant then told Dahl and Smith to take their pants off, after which defendant and "Kevin" went through Dahl's pockets and took Dahl's Safe Link cell phone, a pack of cigarettes, and $20. "Peanut" went through Smith's pockets. "Kevin" and "Peanut" took Smith's cell phone, wallet, keys, and cigarettes. Following the robbery, Dahl stood up and looked out of the window and saw defendant drive off in Smith's Chevy with "Kevin" and "Peanut." Dahl and Smith then went to a gas station and telephoned police.
>
> The responding officers radioed information regarding the make and model of the stolen vehicle. Detroit police officers found that vehicle, and while conducting surveillance on the vehicle, saw "Peanut," later identified as Darian Baker, get into the vehicle and drive away. He was arrested a short distance from where police initially located the vehicle.
>
> Dahl and Smith were called into the police station to identify their property. While there, both identified defendant from three photo arrays as the man who held a gun on them, took their property and drove away in the Chevy.

*People v. Crenshaw*, No. 301668, 2012 WL 1192172, at *1-2 (Mich. Ct. App. Apr. 10, 2012)

(footnote omitted).

During the investigation, Dahl and Smith identified the white house on Russell and Seven Mile Road where they encountered the defendant. The police obtained a search warrant for that

-2-

house, and discovered Smith's and Dahl's cell phones. The petitioner was present at the time and the police arrested him.

The jury convicted the defendant of two counts of armed robbery, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm. The jury acquitted the petitioner of carjacking and unlawfully driving away an automobile. The petitioner's conviction was affirmed on appeal, but the court found a sentencing error and remanded for re-sentencing. *Crenshaw*, 2012 WL 1192172, *lv. to appeal den.*, 492 Mich. 868, 819 N.W.2d 911 (2012).

On August 20, 2013, the petitioner filed a petition for a writ of habeas corpus in this Court, in which he asserted two claims for relief, which he had presented to the state appellate courts:

> I. There was insufficient evidence for a rational trier of fact to find beyond a reasonable doubt that petitioner committed these offenses.
>
> II. The photo array conducted while petitioner was in custody was unduly suggestive and violated his due process rights.

Pet. at 2-3.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Crenshaw filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v.*

*Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner first argues here, as he did in the state court of appeals, that the evidence presented was insufficient for a rational trier of fact to find beyond a reasonable doubt that he was the one who committed the robberies. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16)). In Michigan, "it is well settled that identity is an element of every offense." *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753, 767 (2008) (citing *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967)).

On direct review, the court of appeals found ample evidence to satisfy the appropriate constitutional standard. Noting that "[t]he positive identification of a defendant by a witness may be sufficient to support a defendant's conviction of a crime," *Crenshaw*, 2012 WL 1192172, at *5, the court reasoned:

> Dahl and Smith identified defendant during trial as the third perpetrator of these crimes, who threatened them with a gun. There exists an independent basis for their in-court identifications of defendant. Smith and Dahl saw defendant as he came out of a house and got into a car with them. There is also evidence that Smith, Dahl, "Peanut," and "Kevin" went inside a house and thereafter Smith and Dahl saw defendant come out with a gun. Dahl and Smith said, "[A]re you serious?" Defendant responded, "You think I'm playing," and then defendant pulled the trigger while pointing the gun at Dahl and Smith. The gun "clicked" but did not go off. Defendant then told Dahl and Smith to get on the ground, which Dahl and Smith did. Defendant told Dahl and Smith to lay flat on their faces and told "Kevin" and "Peanut" to go through their pockets. Defendant then told Dahl and Smith to take their pants off, which Dahl and Smith did. Defendant grabbed Dahl's and Smith's pants and defendant, "Kevin," and "Peanut" then went through Dahl's and Smith's pockets. "Kevin" and "Peanut" took Smith's cell phone, wallet, keys, and cigarettes. Defendant and "Kevin" went through Dahl's pockets and took Dahl's cell phone, a pack of cigarettes, and $20. Dahl saw defendant drive off in Smith's Chevy with "Kevin" and "Peanut." Also, Dahl and Smith pointed out to police a white house on Seven Mile and Russell as the house where they picked defendant up. There is evidence that this information was used by the police to obtain and conduct a search warrant of a house located at Seven Mile and Russell. Smith and Dahl identified their cell phones from the phones seized from this house during the search. Also, defendant was at the house on Russell Street and was taken into custody during the execution of the search warrant. Therefore, we hold that there was sufficient evidence, beyond a reasonable doubt that a rational trier of fact could have used in identifying defendant as the third perpetrator of these crimes.

*Ibid.*

The petitioner faces a steep climb to establish that the state court's discussion of the evidence unreasonably applied the *Jackson* standard in this case. "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable

doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Ibid.* Indeed, the *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011); *see also Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). On federal habeas review, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012). That question must be answered in the negative here.

The Sixth Circuit has observed that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F. 2d 1142, 1144 (6th Cir. 1985) (citations omitted). The state court of appeals made the same point. The jury was free to reject the testimony of those witnesses (Dahl and Smith) if it found them incredible. But a federal habeas court does not reweigh the evidence or redetermine the credibility of the witnesses, whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the factfinder that assesses the probative value of the evidence and resolves any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The trial evidence was sufficient to support the convictions.

B.

In his second claim, the petitioner contends that the photo array was unduly suggestive and there was no reason to have a photographic line up because he was in custody when the line up took

place. He did not raise that issue in the trial court. The Michigan Court of Appeals reviewed the claim under a plain error standard.

The Due Process Clause protects the accused against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). A conviction based on identification testimony that follows a pretrial photo identification violates the defendant's constitutional right to due process "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). If an identification procedure is found to be unduly suggestive, then the court must assess several factors to determine whether the in-court identification was free from the taint of the identification procedure. It is the likelihood of misidentification that violates a defendant's due process right. *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

> The state court of appeals held that the photo array was not unduly suggestive, stating:
>
> Defendant argues that the photo arrays presented to Dahl and Smith were unduly suggestive; however, there is no evidence to support defendant's claim. The police asked Smith to look at a photo array of six or eight individuals. Smith identified photo number five, defendant, as one of the suspects. Smith was able to identify defendant by his "unmistakable eyes." Dahl was also asked to look at a photo array of six people. Dahl identified defendant as the perpetrator that had the gun. Furthermore, the police did not tell Dahl that one of the suspects' pictures was in the line-up. Therefore, we hold that the photo arrays presented to Dahl and Smith were not unduly suggestive.

*Crenshaw*, 2012 WL 1192172, at *6. The petitioner has not suggested a basis for finding that this determination was unreasonable in any way, or failed to correctly apply federal constitutional law. Nor can this Court find any basis to disagree with the state court's conclusion.

Moreover, an accused has no constitutional right to a pretrial lineup. *Branch v. Estelle*, 631 F. 2d 1229, 1234 (5th Cir. 1980); *United States v. Robertson*, 606 F.2d 853, 857 (9th Cir. 1979);

*Reyes v. Slayton*, 341 F. Supp. 926, 927 (W.D. Va. 1972).  The rule that a photo show-up cannot be used if the suspect is in custody is based on *People v. Kurlyczyk*, 443 Mich. 289, 297-98 & 298 n.8, 505 N.W.2d 528, 532 & 532 n.8 (1993).  The alleged violation of state law is not a basis for habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pully v. Harris*, 465 U.S. 37, 41 (1984).  The Court therefore declines to grant relief on the basis of the petitioner's claim that the identification procedures used in his case were tainted.

Finally, the Court agrees with the state court's conclusion that Dahl and Smith had a basis for identifying the petitioner at trial that was independent of the photo array.

No constitutional error occurred in the identification evidence presented at trial.

### III.

For the reasons stated, the Court finds that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 20, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 20, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI

---